Jeffrey KRULL, Plaintiff,

v.

John JONES, Secretary of the South Dakota Department of Human Services; Patty Warkenthein, Acting Director of the South Dakota Division of Rehabilitation Services; Robert Bartlett, Manager of Field Operations of the South Dakota Division of Rehabilitation Services; John Ellefson, District Supervisor for the South Dakota Division of Rehabilitation Services; and Larry Cass, Senior Rehabilitation Counselor for the South Dakota Division of Rehabilitation Services, Each in Their Official Capacities, Defendants.

No. Civ. 97–3007.

United States District Court, D. South Dakota, Central Division.

April 26, 1999.

John A. Hamilton, South Dakota Advocacy Service, Sioux Falls, SD, for plaintiff.

James E. Moore, Woods, Fuller, Shultz & Smith, Sioux Falls, SD, for defendants.

AMENDED ORDER

KORNMANN, District Judge.

## INTRODUCTION

[¶ 1] This is the second time a dispositive motion in this case has come before the Court. The Court has set forth in its previous opinion the nature of plaintiff's claims, which will be repeated here for the sake of clarity.

[¶ 2] Title I of the Rehabilitation Act of 1973 authorizes federal grants to state rehabilitation agencies to assist states in helping handicapped individuals prepare for and engage in gainful employment. 29 U.S.C. § 720, et seq. State rehabilitation plans must provide for individual written rehabilitation plans ("IWRP") which shall include a statement of the rehabilitation goals and the specific vocational rehabilitation services to be provided, this as to each client. 29 U.S.C. § 722(b)(1). Plaintiff, who is hearing impaired, alleges in his amended complaint that he applied for and was found eligible for vocational rehabilitation services by the Division of Rehabilitation Services ("Division") and that the Division and plaintiff agreed upon a vocational goal for plaintiff to become a veterinarian. These facts are undisputed. Plaintiff received financial assistance from the South Dakota Department of Human Services ("Department") to complete his bachelor's degree in biology. The Department declined to provide any services to plaintiff beyond his bachelor's degree.

[¶ 3] Plaintiff seeks to enforce his IWRP and to have the Department, i.e. the State of South Dakota ("State"), pay for his doctor of veterinary medicine (D.V.M.) degree. Plaintiff brought this suit under 42 U.S.C. § 1983, claiming a violation of rights secured to him by federal law. Plaintiff claims in his amended complaint that he is entitled to receive as services such degree paid for by the Department under Title I of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 701 et seq., the regulations set forth in 34 C.F.R. 361.1 et seq., and the official manual of policies and practices of the Division. He seeks a declaratory judgment that the defendants' refusal to award such benefits was arbitrary, capricious, an abuse of discretion and violated federal law and the Division's policies. He also seeks injunctive relief prohibiting defendants from denying him the services he seeks. Plaintiff's claims for retrospective monetary damages (the expenses he incurred in attending veterinary school) were dismissed based upon the Eleventh Amendment, as were plaintiff's claims against the Department and the individual defendants in their individual capacities. This Court held in its previous order that the only remaining issue is whether such individual defendants, under color of state law, deprived plaintiff of his statutory rights because a blanket policy exists disfavoring funding for graduate school educations which policy violates Title I of the Rehabilitation Act.

[¶ 4] The parties have filed cross-motions for summary judgment. Defendants assert that the South Dakota hearing examiner's holding that "state vocational rehabilitation agencies need not assist eligible persons with post-baccalaureate degrees" is entitled to preclusive effect. Defendants further argue that even if the hearing examiner's decision is not preclusive, the Rehabilitation Act does not require defendants to fund Krull's doctorate degree. Plaintiff asserts that the hearing examiner's conclusions of law are not entitled to preclusive effect and that the defendants denied Krull an IWRP designed to achieve his vocational goal of becoming a veterinarian by denying the services necessary to achieve that goal. Plaintiff specifically alleges that the defendants' policy is inconsistent with the Rehabilitation Act. Plaintiff also claims he is entitled to relief because defendants discriminated against him on the basis of his type of disability.

## DECISION

[¶ 5] Summary judgment is proper where there is no genuine issue as to any

material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c), *Donaho v. FMC Corporation,* 74 F.3d 894, 898 (8th Cir.1996). The United States Supreme Court has held that:

> The plain language of Rule 56(c) mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact", since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322–323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

"A material fact dispute is genuine if the evidence is sufficient to allow a reasonable jury to return a verdict for the non-moving party." *Landon v. Northwest Airlines, Inc.,* 72 F.3d 620, 624 (8th Cir.1995). Defendants assert the preclusive effect of the hearing examiner's decision. Krull agrees that the hearing examiner's finding of facts are preclusive and that there is no genuine issue of material fact at issue here. "Where the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate." *Mansker v. TMG Life Ins. Co.,* 54 F.3d 1322, 1326 (8th Cir.1995).

[¶ 6] Plaintiff is a 26 year old man who has a congenital hearing loss in both ears and he is therefore a disabled individual under 29 U.S.C. § 706(8)(A). He wears a hearing aid in both ears and is limited in all areas of oral communication. He applied for and was found eligible for services in 1991. Krull and his rehabilitation counselor, Larry Cass, agreed upon a vocational goal of "veterinarian" in Krull's IWRP, which goal was consistent with Krull's strengths, resources, priorities, concerns, abilities and capabilities. The

Department agreed to provide "training", meaning the payment of tuition and fees, but the Department consistently informed Krull that the Department would not fund training beyond a bachelor's degree based upon Department policy. The IWRP was reevaluated each year and for four years the IWRP stated that the agreed upon goal was for Krull to become a veterinarian. The final IWRP in 1995 was changed by Cass to indicate that Krull's vocational goal was to become a "biologist". The parties agreed that the purpose of this change was because Krull had to declare a major (apparently other than pre-veterinary medicine) and he declared his undergraduate degree as biology. Apparently, the department would not pay for the final additional quarter of Krull's undergraduate degree without the change in the IWRP. It is clear to the Court that neither Krull's nor the Department's intention, namely that Krull complete the undergraduate requirements to be able to attend veterinary medicine school, changed in or for that final quarter. The only change was that Krull was required to declare an undergraduate major and did so. Apparently, the Department had paid tuition and fees for the previous years for college pre-veterinary training. It is unclear to the Court why the IWRP had to be amended to pay for the final quarter since nothing had changed as far as Krull's and Cass's agreement about Krull's vocational goal. Regardless of the vocational goal listed on the final IWRP, Krull and the Department were in agreement that the vocational goal of becoming a veterinarian was consistent with Krull's desires and abilities and was an appropriate vocational goal for him. However, the Department maintained that it would not, pursuant to policy, pay for graduate training for Krull.

[¶ 7] Defendants first assert that the hearing examiner concluded that Krull was not entitled to paid for graduate training and that conclusion is res judicata. The issue before the hearing examiner was whether the Department "is required to

provide additional educational services to Jeffrey Krull for veterinary school training." The hearing examiner concluded, based upon *Stevenson v. Com. Dept. of Labor & Ind.*, 167 Pa.Cmwlth. 394, 648 A.2d 344 (1994), *Romano v. V.E.S.I.D.*, 223 A.D.2d 829, 636 N.Y.S.2d 179 (1996), and *Berg v. Dept. of Labor*, 95–1336–CIV–T–23(B), (M.D.Fla.1996), that "state vocational rehabilitation agencies need not assist eligible persons with post-baccalaureate degrees."

[¶ 8] As the Court pointed out in its Order on the defendants' motion to dismiss, plaintiff has a right of action under § 1983 to the extent that he claims the State's plan does not conform to a federal requirement. *Mallett v. Wisconsin Division of Vocational Rehabilitation*, 130 F.3d 1245, 1253 (7th Cir.1997). Thus, he may challenge, and has done so in his amended complaint, whether the State's policy of disfavoring funding for graduate school violates his rights under Title I. *Id.* at 1256. However, his claim for retroactive monetary relief has previously been dismissed and the only relief now available in federal court is injunctive or declaratory relief.

[¶ 9] The term "res judicata" is sometimes easily confused with "collateral estoppel." The District Court did so in *Plough v. West Des Moines Community School District*, 70 F.3d 512 (8th Cir.1995). The two concepts, both of which may preclude a federal court from considering a claim, should perhaps be more precisely described as "issue preclusion" and "claim preclusion". *Plough*, 70 F.3d at 515. *See Gjellum v. City of Birmingham, Ala.*, 829 F.2d 1056, 1059 n. 3 (11th Cir.1987).

Issue preclusion, or collateral estoppel, provides that "once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." Claim preclusion, or res judicata, provides that "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Plough*, 70 F.3d at 515, (quoting *Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980)) (citations omitted).

■ [¶ 10] District Courts are required to consider preclusion matters before reaching the merits of a claim. *Peery v. Brakke*, 826 F.2d 740, 744 n. 4 (8th Cir. 1987). The Eighth Circuit has twice considered somewhat similar preclusion arguments and each of the parties rely on one of these cases in support of their conflicting arguments. Plaintiff relies upon *Peery* for the proposition that he is not precluded from litigating in this § 1983 action his claim that the Department's policy of not paying for graduate services (except in exceptional circumstances) violates the Rehabilitation Act. In *Peery*, the plaintiff, a tenured state employee with the South Dakota Department of Agriculture, was terminated from his position without a pre-termination hearing. Peery filed an administrative grievance and the Career Service Commission of South Dakota ("the Commission") denied the grievance, concluding Peery was terminated for cause, that Peery was not afforded a pretermination hearing, and that Peery was not entitled to a pretermination hearing under either state or federal constitutional law. *Peery*, 826 F.2d at 742, 746. Peery appealed that decision to the state court, which appeal was still pending when Peery filed his § 1983 action.

[¶ 11] The Eighth Circuit held in *Peery* that "[u]nder South Dakota law, the doctrine of issue preclusion applies to administrative hearings as it does to judicial proceedings." *Peery*, 826 F.2d at 746. Relying upon the United States Supreme Court's decision in *University of Tennessee v. Elliott*, 478 U.S. 788, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986) ("*Elliott*"), that "factual findings of a state administrative proceeding are to be given preclusive effect by a federal court in a subsequent § 1983

action," the *Peery* court held that the Commission's factual finding that Peery did not receive a pretermination hearing is to be given preclusive effect. *Peery*, 826 F.2d at 746. However, the Eighth Circuit held that "the disputed issue in this case is one of law—whether Peery was constitutionally entitled to a pretermination hearing." *Id.* The Eighth Circuit went on to decide that issue, despite the fact that the identical issue had been considered by the Commission, and was apparently on appeal in the state courts.

[¶ 12] Defendants rely upon a subsequent Eighth Circuit opinion in *Plough v. West Des Moines Community School District*, 70 F.3d 512 (8th Cir.1995), for the proposition that plaintiff's claims are barred in this § 1983 action. In *Plough*, the plaintiff, a student, was suspended and expelled by the school board for possession of lysergic acid diethylamide ("LSD") on school grounds. Plough appealed to the Iowa State Board of Education ("the State Board"), claiming the school board denied him due process when the school board, while in private consideration of his case, without his presence, considered evidence from two school board members about Plough's purported drug use. The State Board affirmed the school board's disposition, finding that Plough was not prejudiced by the addition of the improper testimony at the school board "hearing" and that his due process rights were not violated. *Plough*, 70 F.3d at 516, 517. Plough did not appeal that decision to the state court.

[¶ 13] The Eighth Circuit held that, as in South Dakota, under Iowa law the doctrine of issue preclusion (collateral estoppel) applies to administrative (the State Board) fact findings. *Plough*, 70 F.3d at 515 n. 8. Again, based upon *Elliott*, the State Board's fact findings were found to have preclusive effect. *Plough*, 70 F.3d at 516. The *Plough* panel went one step further. *Plough* held that the plaintiff's due process claims were barred in the § 1983 action by claim preclusion (res judicata). The

*Plough* panel noted that under Iowa Law, an unreviewed administrative decision can be given preclusive effect, especially claims involving the same subject matter as the prior proceeding. *Plough*, 70 F.3d at 517.

> The State Board specifically addressed Plough's due process claim and decided it adversely to him. That decision became final when Plough chose not to appeal it. He chose to litigate this claim in a state forum and is now barred from relitigating the same claim in federal court.

*Plough*, 70 F.3d at 517.

[¶ 14] In *Peery*, a state administrative agency made a factual finding (that Peery was dismissed for cause) and a legal conclusion (that Peery was not entitled to a pretermination hearing). In *Plough*, a state administrative agency held, as to probably a mixed question of law and fact (that Plough was not prejudiced by the improper testimony) and a legal conclusion (that Plough's due process rights were not violated). In the present case, a state administrative agency made a finding (that Krull received all the services that he was entitled to under the Rehabilitation Act as interpreted by the Department in its policy) and a legal conclusion (that the Department's post-graduate policy is not in violation of the Rehabilitation Act).

[¶ 15] Clearly, under both *Peery* and *Plough*, the hearing examiner's findings of fact are entitled to preclusive effect and Krull is not attempting to litigate these findings. The parties disagree, however, whether this Court is precluded from addressing the legal issue of whether the Department's post-graduate policy and its application to Krull violates the Rehabilitation Act. The Court concludes that it is precluded from doing so, relying on *Plough*. In so finding, this Court does not reject *Peery*. Indeed, one panel of the Eighth Circuit cannot overturn precedent set by another panel. *United States v. Ortega*, 150 F.3d 937, 947 (8th Cir.1998) ("[I]n our circuit, one panel is not at liberty to overrule the decision of another."),

cert. denied, —— U.S. ——, 119 S.Ct. 837, 142 L.Ed.2d 693 (1999).

[¶ 16] *Peery* held that the state agency's fact findings were entitled to be given preclusive effect in a subsequent § 1983 action. *Peery*, 826 F.2d at 746. The Eighth Circuit went on to hold that "the disputed issue in this case is one of law ... issue preclusion under *Elliott* does not apply in any meaningful sense to the present case." *Id.* In contrast, *Plough* went one step further and held that, under Iowa law, a state agency's conclusions of law which had become "final" are entitled to preclusive effect under the doctrine of claim preclusion.

■ [¶ 17] Perhaps the reason the *Plough* panel went the extra step and considered claim preclusion of an administrative agency's legal conclusions is because the defendant in *Plough* urged in a motion for summary judgment before the U.S. District Court, and presumably defended the appeal on the same grounds, that Plough's § 1983 action was barred by res judicata. *Plough*, 70 F.3d at 514. In contrast, in *Peery*, the defendant moved to bar Peery's § 1983 claim at the district court level based upon abstention, 826 F.2d at 745, and issue preclusion, 826 F.2d at 746. The district court declined to abstain or to give preclusive effect to the Commission's factual findings, the matter was tried to a jury, and the district court subsequently entered a judgment as a matter of law holding that Peery had received all the process to which he was entitled. *Peery*, 826 F.2d at 742. Nowhere in *Peery* does it appear that claim preclusion was raised. "Res judicata is not a jurisdictional issue; rather, it is an affirmative defense that may be waived by the party allowed to assert it." *U.S. v. Metropolitan St. Louis Sewer Dist. (MSD)*, 952 F.2d 1040, 1043 (8th Cir.1992). It appears that the *Peery* panel did not find Peery's claims precluded in his § 1983 action because the defendants did not assert claim preclusion. Indeed and of more significance, claim preclusion could not

have been raised because, since the Commissioner's decision was the subject of a pending state court appeal, there was no final decision to which preclusive effect could apply. By contrast, the *Plough* panel, which was considering a final agency decision, was presented with the issue of claim preclusion and ruled that where the state court gives preclusive effect to final state administrative agency legal conclusions, they are entitled to preclusive effect (res judicata) in a subsequent § 1983 action. This Court is bound by that holding. *Plough* is on "all fours" with the present case. *Peery* is not.

■ [¶ 18] *Plough* directs us to first determine whether, under South Dakota law, an unreviewed administrative decision can be given preclusive effect. The South Dakota Supreme Court, in its seminal case on applicability of the doctrine of res judicata in an administrative hearing, treated the doctrine of res judicata as encompassing both the principles of claim preclusion and issue preclusion, issue preclusion being more often identified as collateral estoppel. *Gottschalk v. South Dakota State Real Estate Commission*, 264 N.W.2d 905, 908 (S.D.1978). *Gottschalk* held that under South Dakota law, res judicata, or claim preclusion, "prevents relitigation of an issue of ultimate fact actually litigated or which could have been properly raised and determined therein." *Gottschalk*, 264 N.W.2d at 908–909. The South Dakota Supreme Court has reaffirmed that "the doctrine of res judicata is equally applicable to contested administrative hearings as it is to judicial proceedings." *Schmidt v. Zellmer*, 298 N.W.2d 178, 180 (S.D.1980). Subsequent South Dakota Supreme Court cases have more clearly drawn the distinction between res judicata and collateral estoppel. In *Black Hills Jewelry Manufacturing Co. v. Felco Jewel Industries., Inc.*, 336 N.W.2d 153, 157 (S.D.1983), the South Dakota Supreme Court explained that the doctrine of res judicata, which "serves as claim preclusion to prevent relitigation of an issue actually litigated or

which could have been properly raised and determined in a prior action," is "broader than the issue preclusion function of collateral estoppel." The *Black Hills* court noted that at the outset, "the earlier court must have had jurisdiction and its decision must be final and unreversed." *Id.* Further, "[f]or the purposes of res judicata, a cause of action is comprised of the facts which give rise to, or establish, the right a party seeks to enforce." *Id.* The test for determining if both causes of action are the same "is a query into whether the wrong sought to be redressed is the same in both actions." *Id.* Since *Black Hills*, the South Dakota Supreme Court has culminated the foregoing rules into four factors for determining whether res judicata is applicable:

> (1) Whether the issue decided in the former adjudication is identical to the present issue; (2) whether there was a final judgment on the merits; (3) whether the parties in the two actions are the same or in privity; and (4) whether there was a full and fair opportunity to litigate the issues in the prior adjudication.

*Springer v. Black,* 520 N.W.2d 77, 79 (S.D. 1994).

[¶ 19] The parties do not dispute that the hearing officer had jurisdiction to hear Krull's appeal of the denial of benefits and that the hearing officer's decision is a final decision, having not been appealed. Krull maintains, however, that the issues are not the same and that he did not have a full and fair opportunity to litigate the issues before the hearing officer. In the brief Krull submitted to the hearing examiner, he raised the claims that the Department's policy, and the Department's interpretation of its policy, violates the clear language of the Rehabilitation Act and that the Department's policy discriminates based upon Krull's type of disability. These are the identical claims raised in Krull's amended § 1983 complaint. Further, Krull was represented by counsel and submitted a 32 page petitioner's brief and

a 14 page reply brief, both of which were well researched and well written. The hearing examiner issued a five page opinion in which he examined the history and language of the Rehabilitation Act and some case law. The hearing examiner concluded that the Department "is not required to provide additional educational services to Jeffrey Krull for veterinary school training" and the Department "did not err in denying Jeffrey Krull's request for financial assistance with the costs of his veterinary medicine program." Contrary to Krull's assertion that the hearing examiner failed to decide the issues Krull presented, implicit in the opinion is the determination that the Department's policy and the application of that policy to Krull do not violate the Rehabilitation Act.

[¶ 20] Krull continues to maintain that since the hearing officer did not actually decide all issues raised by Krull, issue preclusion cannot apply. The issue here is not issue preclusion, or collateral estoppel. Krull's claims are barred by the more encompassing doctrine of claim preclusion, or res judicata, because the parties were the same and the identical issues were litigated in the administrative proceeding. If Krull objected to the hearing examiner's conclusions, or the extent to which the issues were discussed, he could have and should have appealed to the state courts.

[¶ 21] As demonstrated by the foregoing discussion, Krull's § 1983 action is barred because he challenges a legal issue, whether the Department's policy violates federal law, which issue the administrative law judge already decided adversely to Krull. In the Eighth Circuit that holding is entitled to preclusive effect in a subsequent § 1983 action.

[¶ 22] Plaintiff relies upon *Gjellum v. City of Birmingham, supra,* for the proposition that unreviewed state agency decisions should not receive "claim preclusive effect in a section 1983 action." *Gjellum,* 829 F.2d at 1070. The opinion in Gjellum provides an exhaustive and very informative discussion of the doctrines of claim

preclusion and issue preclusion and the application of those doctrines to unreviewed agency decisions in the context of § 1983 litigation. However, *Plough* is the law of the Eighth Circuit and this Court is bound by *Plough*.

[¶ 23] Plaintiff was not without a remedy. Clearly, plaintiff was not required to exhaust his state administrative remedies before instituting a § 1983 in federal court. *Patsy v. Board of Regents of State of Fla.*, 457 U.S. 496, 500, 102 S.Ct. 2557, 2559, 73 L.Ed.2d 172 (1982). However, once he instituted a state administrative claim, lost and did not appeal the final judgment is entitled to preclusive effect. Plaintiff's remedy for what he deems an "inadequate" administrative process was to appeal the hearing examiner's decision to the South Dakota Circuit Courts. His failure to do so resulted in the agency's ruling becoming a final order entitled to preclusive effect.

### ORDER

[¶ 24] Based upon the foregoing,

[¶ 25] IT IS ORDERED:

(1) Defendant's motion for summary judgment, Doc. 22, is granted.

(2) Plaintiff's motion for summary judgment, Doc. 32, is denied.

(3) Plaintiff's amended complaint is dismissed with prejudice and without costs.