[627 NYS2d 815]

In the Matter of ANTHONY CHIRICO, Petitioner, v OFFICE OF VOCATIONAL AND EDUCATIONAL SERVICES FOR INDIVIDUALS WITH DISABILITIES (VESID) et al., Respondents.

Third Department, June 8, 1995

APPEARANCES OF COUNSEL

*Cliff Zucker*, Albany, for petitioner.

*Dennis C. Vacco, Attorney-General,* Albany *(Leslie B. Neustadt* and *Nancy A. Spiegel* of counsel), for respondents.

**OPINION OF THE COURT**

MERCURE, J.

Petitioner, a quadriplegic in his mid-40's, has been employed by the Burnt Hills-Ballston Lake Central School District since 1972, first as teacher and then, for the last 7½ years, as a high school guidance counselor. At issue in this proceeding is whether respondent Office of Vocational and Educational Services for Individuals with Disabilities (hereinafter VESID) may be compelled to furnish petitioner with a voice-activated computer system, known as the "Dragon Dictate" system, to facilitate his performance of work-related writing at home. VESID denied petitioner's request for the system, and the denial was adhered to on initial administrative review *(see,* 8 NYCRR 247.2). Following a fair hearing conducted pursuant to 8 NYCRR 247.3, however, a Hearing Officer reversed VESID's determination, finding that petitioner is a person eligible for vocational rehabilitation services pursuant to Education Law § 1002 (1) and 8 NYCRR 247.5 and, therefore, that VESID's denial of petitioner's request was improper. Finally, upon review by respondent Deputy Commissioner for VESID (8 NYCRR 247.3 [n]), the Hearing Officer's determination was annulled as "clearly erroneous on the basis of being contrary to Federal or State law, including policy" (29 USC § 722 [d] [3] [C] [i]; *see,* 8 NYCRR 247.3 [n]), a determination challenged in

the present CPLR article 78 proceeding, transferred to this Court pursuant to CPLR 7804 (g).

The parties' conflicting positions may be easily stated. According to respondents, petitioner's disability does not "constitute[ ] or result[ ] in a substantial handicap to employment" (8 NYCRR 247.5 [c] [1]) because it does not prevent him "from obtaining, retaining or preparing for employment consistent with [his] capacities and abilities" (8 NYCRR 247.5 [a] [3]; see, 29 USC § 722 [a] [1]). That is, because petitioner has already attained his "employment outcome" (29 USC § 706 [8] [A]) by obtaining and retaining full-time "competitive employment in the integrated labor market" (29 USC § 706 [5]), he is not eligible for financial assistance. In this connection it should be noted that petitioner's performance of his present occupation as a guidance counselor is exemplary, and he is tenured and in no way threatened with loss of his employment if he is unable to obtain the voice-activated computer system.

Petitioner first argues that he has not reached his full vocational potential and the voice-activated computer system would remove a substantial obstacle to advancement, thereby maximizing his "employability" (34 CFR 361.31 [b] [2]; 8 NYCRR 247.5 [c] [2]; see, 29 USC 706 [8] [A] [ii]), a position substantially supported by hearing evidence that petitioner failed to apply for a recommended position as teacher/leader in the guidance department only because it involved more paperwork.

Petitioner further contends that, consistent with the remedial purpose of the Federal Rehabilitation Act of 1973 (29 USC § 701 et seq.), he is entitled to the assistance sought even if it is not necessary to achieve a higher vocational goal. In that regard, we note Congress' declaration that "all programs, projects, and activities receiving assistance under [the Rehabilitation Act] shall be carried out in a manner consistent with the principles of * * * respect for individual dignity, personal responsibility, self-determination, and pursuit of meaningful careers, based on informed choice, of individuals with disabilities" (29 USC § 701 [c]), and the record shows that petitioner's achievement in his present position has come as the result of tremendous personal sacrifice. In order to perform his job responsibilities, petitioner is required to spend 2 to 4 hours each night, six days a week, preparing written letters, reports and college recommendations for students. Because petitioner is physically unable to write, he is required

to type the documents by inserting a single finger through an assistive device. The uncontroverted evidence showed that preparation of these documents is a necessary component of petitioner's employment, that the work cannot be completed during working hours, that typing in the present method is laborious, inefficient and excessively time consuming, and that it causes petitioner pain, loss of hand support and muscle spasms.

We conclude that petitioner's view (embodying the Hearing Officer's interpretation of governing State and Federal statutes, regulations and policies) is the sounder one. We are unwilling to accept respondents' implicit view that they can best determine the bounds of petitioner's potential and judgment that petitioner's present position (attained before he was 40) is all he should ever expect to achieve. Quite the contrary, the Rehabilitation Act is " 'designed to meet the broad range of needs of individuals with handicaps in becoming integrated into the competitive workplace and the community and *in reaching their highest level of achievement*' " (*Matter of Polkabla v Commission for Blind & Visually Handicapped*, 183 AD2d 575, 576 [emphasis in original], quoting S Rep No. 388, 99th Cong, 2d Sess 5 [1986] [Federal Rehabilitation Act construed as providing services to enable blind paralegal's achievement of highest vocational goals (undergraduate and law degrees) and not merely suitable employment]; *see, Indiana Dept. of Human Servs. v Firth*, 590 NE2d 154 [Ind] [law student's deafness was a substantial handicap to employment within meaning of Federal Rehabilitation Act, rendering him eligible for vocational rehabilitation services even if he could currently obtain employment]; *see also, Buchanan v Ives*, 793 F Supp 361). It necessarily follows that there was not "clear and convincing evidence" to support the Deputy Commissioner's finding that the Hearing Officer's determination was "clearly erroneous on the basis of being contrary to Federal or State law, including policy" (29 USC § 722 [d] [3] [C] [i]; 8 NYCRR 247.3 [n]). Accordingly, the petition should be granted and respondents' determination annulled.

Respondents' remaining contentions have been considered and found lacking in merit.

CARDONA, P. J., MIKOLL, CASEY and PETERS, JJ., concur.

Adjudged that the determination is annulled, with costs, petition granted and matter remitted to respondents for further proceedings not inconsistent with this Court's decision.